UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHIL DORAN, VICTORINO RAMIREZ, BORIS SHVATSMAN, NOEL COLLESSO, FELIX TEJADA, ANDREW PARNELL, TOMAS CASTANEDA, JUAN FERNANDEZ, BALJIAWAN MAHABIR, MIGUEL AQUINO and RUBEN SANTIAGO on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NEW YORKER HOTEL MANAGEMENT COMPANY, INC. and MCR DEVELOPMENT, LLC, <br><br> Defendants. | Civil Case No.:  20-cv-4311 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

    Plaintiffs Phil Doran, Victorino Ramirez, Boris Shvatsman, Noel Collesso, Felix Tejada, Andrew Parnell, Tomas Castaneda, Juan Fernandez, Baljiawan Mahabir, and Miguel Aquino, on behalf of themselves and all other similarly situated persons ("Plaintiffs"), by and through their undersigned counsel, alleges upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' hourly employees and investigation of their counsel), as follows:

## **NATURE OF ACTION**

    1.    Plaintiffs bring this action on behalf of themselves and all other similarly situated former hourly paid and non-exempt employees of The New Yorker Hotel Management Company, Inc. ("NYHMC") and current and former hourly paid and non-exempt employees of MCR Development, LLC ("MCR") (together with NYHMC, "Defendants"), for breach of contract.

{N0160722.1}

2. More specifically, Plaintiffs were employees of NYHMC, many of whom worked for over 20 years at The New Yorker Hotel located at 481 8th Avenue, New York, New York 10001 (the "New Yorker Hotel"), until in or around February 2019, when NYHMC terminated Plaintiffs and management of the New Yorker Hotel was transferred to MCR.

3. In connection with the termination of Plaintiffs, NYHMC and Plaintiffs entered into valid and enforceable severance agreements, which were supposed to provide Plaintiffs with payments ranging from approximately $40,000 to over $200,000 each. However, NYHMC has failed to pay Plaintiffs any of the amounts due and owing thereunder, despite due demand therefor.

4. Immediately after Plaintiffs' termination from NYHMC, defendant MCR hired Plaintiffs as hourly employees of MCR to perform the same job functions and duties that they performed while employed by NYHMC. As employees of MCR, Plaintiffs report to the same supervisors, utilize the same equipment and uniform, and are subject to the same personnel policies that were in place while employed by NYHMC. Effectively, the only thing that has changed is the name of the entity who issues Plaintiffs their payroll checks.

5. Indeed, upon information and belief, MCR is the corporate successor to NYHMC, acting as a mere continuation of NYHMC and continuing the uninterrupted business activities of NYHMC, with common ownership and personnel, management, assets, goodwill, and business location.

6. For these reasons, Plaintiffs bring this action on behalf of themselves and other similarly situated individuals to recover from Defendants the unpaid severance payments due and owing to them, and to recover additional interest and penalties.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d). This is a putative class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

**THE PARTIES**

**The Plaintiffs**

9. Plaintiff Phil Doran is a resident of New York, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Doran was employed by NYHMC at the New Yorker Hotel on a full-time basis from October 14, 1997 to approximately February 2019 as a maintenance/repairman. As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms including painting and fixing walls, carpets and tiles. Throughout his employment with NYHMC, Mr. Doran worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $37.29.

10. In connection with his termination of employment with NYHMC, Mr. Doran executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Doran the sum of $154,700.86 (the "Doran Severance

Agreement").[1] To date, NYHMC has failed to make any payments to Mr. Doran despite the clear and unambiguous requirement to do so under the Doran Severance Agreement.

11.     Mr. Doran commenced employment with MCR in approximately February 2019 as a maintenance/repairman, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Doran continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

12.     Plaintiff Victorino Ramirez is a resident of Cacasauqua, Pennsylvania, and is a former employee of NYHMC and a current employee of MCR. Mr. Ramirez was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately July 6, 1995 to approximately February 2019 as a maintenance/repairman. As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms including painting and fixing walls, carpets and tiles. Throughout his employment with NYHMC, Mr. Ramirez worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $37.29.

13.     In connection with his termination of employment with NYHMC, Mr. Ramirez executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Ramirez the sum of $176,800.98 (the "Ramirez Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Ramirez despite the clear and unambiguous requirement to do so under the Ramirez Severance Agreement.

14.     Mr. Ramirez commenced employment with MCR on January 1, 2019 as maintenance/repairman, performing the same job functions and duties he performed while

---

[1]     A true and correct copy of the Doran Severance and Release Agreement is annexed hereto as Exhibit 1. All other Plaintiffs signed identical or near identical contracts and only their individual severance amounts differed.

employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Ramirez continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

15. Plaintiff Boris Shvatsman is a resident of Queens, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Shvatsman was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately November 25, 1996 to February 2019 as a coal engineer. As a coal engineer, his job responsibilities included general maintenance of hotel rooms and immediate response to guest complaints. Throughout his employment with NYHMC, Mr. Shvatsman worked from 1 p.m. until 9 p.m., 4 days per week, and 6 a.m. to 2 p.m. 1 day per week and most recently had been paid an hourly rate of approximately $36.36.

16. In connection with his termination of employment with NYHMC, Mr. Shvatsman executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Shvatsman the sum of $169,397.68 (the "Shvatsman Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Shvatsman despite the clear and unambiguous requirement to do so under the Shvatsman Severance Agreement.

17. Mr. Shvatsman commenced employment with MCR in approximately February 2019, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Shvatsman continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

18. Plaintiff Noel Collesso is a resident of Brooklyn, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Collesso was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately June 3,1996 to approximately 2019 as an electrician. As an electrician, his job responsibilities included fixing any and all electrical issues in the hotel. Throughout his employment with NYHMC, Mr. Collesso worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $43.81.

19. In connection with his termination of employment with NYHMC, Mr. Collesso executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Doran the sum of $204,526.01 (the "Collesso Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Collesso despite the clear and unambiguous requirement to do so under the Collesso Severance Agreement.

20. Mr. Collesso commenced employment with MCR in approximately February 2019 as an electrician, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Collesso continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

21. Plaintiff Felix Tejada is a resident of Holtsville, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Tejada was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately April 9, 1998 to approximately February 2019 as a maintenance/repairman. As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms included painting and fixing walls, carpets and tiles.

Throughout his employment with NYHMC, Mr. Tejada worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $37.37.

22. In connection with his termination of employment with NYHMC, Mr. Tejada executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Tejada the sum of $154,700.86 (the "Tejada Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Tejada despite the clear and unambiguous requirement to do so under the Tejada Severance Agreement.

23. Mr. Tejada commenced employment with MCR in approximately February 2019 as a maintenance/repairman, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Tejada continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

24. Plaintiff Andrew Parnell is a resident of Bronx, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Parnell was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately April 6, 1998 to approximately February 2019 as a maintenance/repairman. As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms included painting and fixing walls, carpets and tiles. Throughout his employment with NYHMC, Mr. Parnell worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $37.37.

25. In connection with his termination of employment with NYHMC, Mr. Parnell executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Parnell the sum of approximately $154,700 (the "Parnell

Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Parnell despite the clear and unambiguous requirement to do so under the Parnell Severance Agreement.

26. Mr. Parnell commenced employment with MCR in approximately February 2019 as a maintenance/repairman, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Parnell continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

27. Plaintiff Tomas Castaneda is a resident of Ridgewood, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Castaneda was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately June 1, 1994 to approximately February 2019 as a maintenance/repairman. As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms included painting and fixing walls, carpets and tiles. Throughout his employment with NYHMC, Mr. Castaneda worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $35.06.

28. In connection with his termination of employment with NYHMC, Mr. Castaneda executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Castaneda the sum of $184,167.69 (the "Castaneda Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Castaneda despite the clear and unambiguous requirement to do so under the Castaneda Severance Agreement.

29. Mr. Castaneda commenced employment with MCR in approximately February 2019 as a maintenance/repairman, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr.

Castaneda continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

30. Plaintiff Juan Fernandez is a resident of Carteret, New Jersey, and is a former employee of NYHMC and a current employee of MCR. Mr. Fernandez was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately October 20, 2004 to approximately February 2019 as a coal engineer. As a coal engineer, his job responsibilities included general maintenance of hotel rooms and immediate response to guest complaints. Throughout his employment with NYHMC, Mr. Fernandez worked from 2 p.m. until 10 p.m., 3 days per week, and 6 a.m. until 2 p.m. 2 days per week and most recently had been paid an hourly rate of $37.37.

31. In connection with his termination of employment with NYHMC, Mr. Fernandez executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Fernandez the sum of $108,375.00 (the "Fernandez Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Fernandez despite the clear and unambiguous requirement to do so under the Fernandez Severance Agreement.

32. Mr. Fernandez commenced employment with MCR in approximately February 2019 as a coal engineer, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Fernandez continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

33.     Plaintiff Baljiawan Mahabir is a resident of Brooklyn, New York, and is a former employee of NYHMC and a current employee of MCR.  Mr. Mahabir was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately August 27, 2012 to approximately 2019 as a coal engineer.  As a coal engineer, his job responsibilities included general maintenance of hotel rooms and immediate response to guest complaints.  Throughout his employment with NYHMC, Mr. Mahabir worked from 3 p.m. until 11 p.m., 5 days per week, and most recently had been paid an hourly rate of $37.37.

34.     In connection with his termination of employment with NYHMC, Mr. Mahabir executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Mahabir the sum of approximately $40,000 (the "Mahabir Severance Agreement").  To date, NYHMC has failed to make any payments to Mr. Mahabir despite the clear and unambiguous requirement to do so under the Mahabir Severance Agreement.

35.     Mr. Mahabir commenced employment with MCR in approximately February 2019 as a coal engineer, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel.  Mr. Mahabir continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

36.     Plaintiff Miguel Aquino is a resident of Brooklyn, New York, and is a former employee of NYHMC and a current employee of MCR.  Mr. Aquino was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately June 22, 1995 to approximately February 2019 as a maintenance/repairman.  As a maintenance/repairman, his job responsibilities included fixing issues related to hotel rooms included painting and fixing walls, carpets and tiles.

Throughout his employment with NYHMC, Mr. Aquino worked from 8 a.m. until 4 p.m., 5 days per week, and most recently had been paid an hourly rate of $36.28.

37. In connection with his termination of employment with NYHMC, Mr. Aquino executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Aquino the sum of $176,800.98 (the "Aquino Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Aquino despite the clear and unambiguous requirement to do so under the Aquino Severance Agreement.

38. While employed at NYHMC as a maintenance/repairman, Mr. Aquino could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he worked. Mr. Aquino could not hire or fire other hourly employees and could not pick and choose a particular post to service during any of his given shifts, but rather was assigned a particular post by his supervisors. Despite this lack of independent discretion, throughout the entirety of his employment with NYHMC, Mr. Aquino was not properly compensated for all hours worked.

39. Mr. Aquino commenced employment with MCR in approximately February 2019 as a maintenance/repairman, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Aquino continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

40. Plaintiff Ruben Santiago is a resident of Brooklyn, New York, and is a former employee of NYHMC and a current employee of MCR. Mr. Santiago was employed by NYHMC at the New Yorker Hotel on a full-time basis from approximately September 3, 1998 to

approximately February 2019 as a coal engineer. As a coal engineer, his job responsibilities included general maintenance of hotel rooms and immediate response to guest complaints. Throughout his employment with NYHMC, Mr. Santiago worked from 3 p.m. until 11 p.m., 3 days per week and from 10 p.m. until 6 a.m., 2 days per week, and most recently had been paid an hourly rate of $37.26.

41. In connection with his termination of employment with NYHMC, Mr. Santiago executed a Voluntary Agreement and General Release effective December 31, 2018, pursuant to which NYHMC was to pay Mr. Santiago the sum of $153,339.01 (the "Santiago Severance Agreement"). To date, NYHMC has failed to make any payments to Mr. Santiago despite the clear and unambiguous requirement to do so under the Mahabir Severance Agreement.

42. Mr. Santiago commenced employment with MCR in approximately February 2019 as a coal engineer, performing the same job functions and duties he performed while employed by NYHMC, and doing so at the same location, *i.e.*, the New Yorker Hotel. Mr. Santiago continues to report to the same supervisors at the New Yorker Hotel that he reported to while employed by NYHMC, continues to use the same equipment and uniform, and is subject to the same personnel policies.

**Defendants**

43. Defendant NYHMC is a domestic corporation conducting business in the Southern District of New York, with its principal place of business located in New York, New York. Upon information and belief, NYHMC owns and operates hotels and motels, and previously served as the management company for the New Yorker Hotel until in or around February 2019.

44. Defendant MCR is a domestic limited liability company conducting business in the Southern District of New York, with its principal place of business located in New York, New

York. According to its website, MCR is a "premier hotel management company and the fifth-largest owner-operator in the United States." MCR has purportedly invested in and developed 119 hotel properties operated under 14 brands, and offers more than 15,000 guestrooms in 29 states and 76 cities.

45. Upon information and belief, MCR has overtaken the operations of NYHMC, including the employment of Plaintiffs and has continued to use the same equipment, management, personnel, and facilities that were used by NYHMC in the management of the New Yorker Hotel. Upon further information and belief, MCR has continued the uninterrupted business operations of NYHMC and there exists a continuity of ownership between MCR and NYHMC such that MCR is the corporate successor to NYHMC.

## FACTUAL ALLEGATIONS

**Defendants' Failure to Pay Plaintiffs' Severance**

46. Plaintiffs were hourly employees of NYHMC, many of whom worked at NYHMC for over 20 years in all facets of the management of the New Yorker Hotel. Plaintiffs included maintenance/repair staff, housekeeping, frontdesk and all other non-exempt hourly paid employees.

47. However, in or around December 2018, management of the New Yorker Hotel was to be transferred to MCR beginning February 2019. At this time there were over 100 employees working at the New Yorker Hotel.

48. Accordingly, on December 31, 2018, NYHMC terminated Plaintiffs, entering into severance agreements with each of them, ranging from approximately $40,000 to over $200,000 (collectively, the "Severance Agreements"). The amount of each Plaintiffs' Severance Agreement was based on a uniform mathematic formula related to their tenure of employment.

49. The Severance Agreements, which were identical in all respects except for the name of the employee and the dollar amounts to be paid thereunder, bound not only NYHMC, but also its "parent(s) and any of its[] affiliates, subsidiaries, or related entities and each of their successors and assigns . . . ."

50. To date, Defendants have failed to make any payments to any of Plaintiffs in breach of the Severance Agreements.

51. By virtue of its status as the corporate successor to NYHMC, MCR is also liable to Plaintiffs for NYHMC's breach of contract.

52. Accordingly, Plaintiffs seek certification of the following class of individuals:

> All individuals who were employed by NYHMC and executed Severance Agreements with NYHMC arising out of their termination of employment with NYHMC, and who did not receive the amounts required to be paid thereunder (the "Class").

**MRC Is the Corporate Successor to NYHMC and Is Liable to Plaintiffs**

53. Upon information and belief, in connection with the transfer of management of the New Yorker Hotel from NYHMC to MCR, MCR overtook the operations of NYHMC, including the employment of Plaintiffs.

54. Indeed, immediately and seamlessly after Plaintiffs were terminated by NYHMC, they were hired by MRC and continued to perform the same job functions and responsibilities at the New Yorker Hotel that they performed while employed by NYHMC. Plaintiffs' schedules remained the same and no Plaintiffs even had time off under the transition.

55. To this end, in connection with their employment by MCR, Plaintiffs use the same equipment and facilities and report to the same exact supervisors and managers that they reported to while employed by NYHMC.

56. Upon information and belief, MCR is a mere continuation of NYHMC, and has continued to use the same management, personnel, equipment, and facilities that were used by NYHMC in the management of the New Yorker Hotel.

57. Upon information and belief, NYHMC ceased ordinary business operations immediately upon transfer of management of the New Yorker Hotel to MCR.

58. Upon further information and belief, MCR has continued the uninterrupted business operations of NYHMC, and there exists a continuity of ownership between MCR and NYHMC, as well as common directors and officers and unity of personnel policies, such that MCR is the corporate successor to NYHMC.

59. Accordingly, MCR is responsible to Plaintiffs for NYHMC's breach of contract and labor law violations.

## CLASS ACTION ALLEGATIONS

60. The preceding paragraphs are incorporated by reference as if fully set forth herein.

61. Plaintiffs bring this action on their own behalf and as a class action pursuant to CAFA on behalf of the aforementioned Class.

62. Excluded from the Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in NYHMC and MCR. Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the Class.

63. Defendants operate and manage one of the most well-known hotels in New York, employing over 100 hourly employees in New York State and they systematically failed and refused to pay their hourly employees for all monies owed pursuant to their Severance Agreements.

The members of the Class are so numerous that joinder of all members in one proceeding is impracticable.

64. Plaintiffs' claims are typical of the claims of other Class members because Plaintiffs are non-exempt hourly-wage employees who have not been compensated pursuant to their Severance Agreements. Plaintiffs and other Class members have sustained similar types of damages as a result of Defendants' breach of contract. Plaintiffs and other Class members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

65. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation. There is no conflict between Plaintiffs and the Class.

66. Common questions of law and fact exist as to the Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a) Whether Defendants failed and/or refused to pay Plaintiffs and the Class pursuant to their Severance Agreements;

(b) Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(c) The nature and extent of class-wide injury and the measure of damages for those injuries.

67. Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions

would entail. Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Members of the Class are readily identifiable from Defendants' own records.

68. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

69. Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the Class.

70. Plaintiff intends to send notice to all members of the Class to the extent required by Fed. R. Civ. P. 23 and/or New York C.P.L.R. § 904.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

71. Plaintiffs incorporate the preceding paragraphs by reference as if fully set forth herein.

72. In connection with NYHMC's termination of Plaintiffs on December 31, 2018, Plaintiffs executed valid and enforceable Severance Agreements, which were binding on NYHMC and its successors and assigns.

73. Pursuant to the express and unambiguous terms of the Severance Agreements, NYHMC was required to pay Plaintiffs sums ranging from $40,000 to over $200,000.

74. To date, however, Defendants have failed to pay Plaintiffs any of the sums due and owing under the severance agreements, despite due demand therefor.

75. At all relevant times, Plaintiffs have complied with their obligations under the Severance Agreements and relied to their detriment on the promises contained therein.

76. Defendants, however, have materially breached the Severance Agreements causing significant financial harm to Plaintiffs.

77. As a direct and proximate result of Defendants breach of the Severance Agreements, Plaintiffs have been injured in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, seek the following relief:

A. Certification of this action as a class action under Rule 23;

B. Designation of Plaintiffs as the Representative of the Class;

C. Appointment of Plaintiffs' counsel as Lead Counsel for the Class;

D. On the First Cause of Action (Breach of Contract): An award to Plaintiffs and members of the Breach of Contract Class of damages for the unpaid amounts due and owing under the Severance Agreements;

E. An award of costs incurred herein, including expert fees;

F. An award of pre-judgment and post judgment interest, as provided by law; and

G. All such other relief as this Court shall deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs and Plaintiffs' employment, to Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: New York, New York
June 5, 2020

*/s/ Lee S. Shalov*
Lee S. Shalov
Brett R. Gallaway
Jason S. Giaimo
McLAUGHLIN & STERN, LLP
260 Madison Ave.
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com
jgiaimo@mclaughlinstern.com

*Attorneys for Plaintiffs and the Proposed Class*